Filed 9/11/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRUCE MILLSAP,<br><br>    Defendant and Appellant.</td><td>B336859<br>(Los Angeles County<br> Super. Ct. No. VA042199)</td></tr>
</table>

APPEAL from postjudgment order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge. Affirmed.

Manuel J. Baglanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, James William Bilderback II, Senior Assistant Attorney General, Dana Muhammad Ali, Supervising Deputy Attorney General, Louis W. Karlin and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

While defendant Bruce Millsap's capital judgment remained pending before the Supreme Court on direct appeal, the California Department of Corrections and Rehabilitation (CDCR) identified him as eligible for resentencing under Penal Code section 1172.75.[1]  At a resentencing hearing, the trial court found it lacked jurisdiction to modify defendant's sentence while his direct appeal remained before the Supreme Court.  On appeal, defendant contends:  (1) the trial court erred in declining to rule on the resentencing motion; and (2) violated his state and federal constitutional rights by holding the resentencing hearing in his absence.  We affirm.

**BACKGROUND**

In January 2000, a Los Angeles County jury convicted defendant of eight first-degree special-circumstance murders (§§ 187, 190.2, subds. (a)(3), (a)(10), (a)(15), (a)(17)(A)) and more than a dozen violent crimes (§§ 664/187, subd. (a), 211, 664/211, 182 & 211, 245, subd. (a)(2), former 12021, subd. (a)(1)).  On all 23 counts, the jury found firearm and/or gang enhancement allegations true (§§ 186.22, subd. (b)(1) & (b)(2), 12022, subd. (a)(1), 12022.1, 12022.5, subd. (a)).  Defendant was sentenced to eight separate death sentences and an overall non-capital sentence of more than 100 years to life, which was to be served consecutively to his death sentences (§ 669).  Among the consecutive sentences imposed was a single, one-year term for serving a prior prison term (former § 667.5, subd. (b).)

---

[1]      Subsequent statutory references are to the Penal Code.

Defendant's judgment is pending before our Supreme Court on automatic appeal. According to the Attorney General, principal and supplemental briefing were completed in 2017.

On June 28, 2023, the trial court issued an order setting the matter "on calendar for possible resentencing," noting defendant's sentence included a one-year prior prison term enhancement. The court gave notice to the parties the same day and appointed trial counsel in July 2023. Between September and December 2023, the court held several scheduling hearings in defendant's absence.

The trial court held a continued resentencing hearing, also in defendant's absence, on December 13, 2023. Appointed trial and appellate counsel requested the court strike the section 667.5, subdivision (b) (section 667.5(b)) enhancement and take a holistic approach to resentencing. Counsel asked the court to consider the Racial Justice Act (§ 745) and reassess defendant's death penalty sentences. Counsel believed the court could potentially consider "claims which have substance to them and go directly to what's going to be litigated in the Supreme Court . . . ."

Following argument of counsel, the court declined to vacate defendant's section 667.5 sentence and resentence him under section 1172.75. The court reasoned, "I think the appropriate forum . . . is the Supreme Court, not here, because they're ultimately going to have to make a decision and calculate or recalculate the defendant's sentence." After finding it did not "have the right or the jurisdiction to modify this sentence," the court denied resentencing without prejudice to revisiting the issue depending on the Supreme Court's decision.

Defendant timely appealed.[2]

## DISCUSSION

## A.    The Trial Court Properly Declined to Resentence Defendant

Issues of jurisdiction based upon undisputed facts present legal issues we review de novo.  (*People v. Velasco* (2023) 97 Cal.App.5th 663, 669 (*Velasco*); *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 770.)  For the reasons that follow, we conclude the court did not err in finding it lacked "the right or the jurisdiction" to resentence defendant in this proceeding.

### 1.    *Governing Principles*

#### a.    *Jurisdiction*

Filing of a notice of appeal "'vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur' [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]"  (*People v. Flores* (2003) 30 Cal.4th 1059, 1064 (*Flores*); see *People v. Cunningham* (2001) 25 Cal.4th 926, 1044 ["'an appeal from an order in a criminal case removes the subject

---

[2]    The notice of appeal in this case identifies the order being appealed as the December 13, 2023 order denying resentencing, 60 days from which would be February 13, 2023.  (See Cal. Rules of Court, rule 8.308(a) [notice of appeal required under section 1237.5 must be filed within 60 days of rendition of judgment or making of order appealed]).  The notice was stamped "received" by the trial court on February 13, 2024, but was file-stamped one day later.  We deem the notice filed on the date the lower court clerk received it.  (See *id.*, rule 8.25(b)(1) ["A document is deemed filed on the date the clerk receives it"].)

4

matter of that order from the jurisdiction of the trial court"].) This rule applies to automatic capital appeals before the Supreme Court (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1089 (*Townsel*)) and "prevents the trial court from rendering an appeal futile by conducting proceedings that may affect or alter the judgment on appeal." (*Stubblefield v. Superior Ct.* (2025) 108 Cal.App.5th 675, 679–680; see also, *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472 (*Alanis*); *Townsel, supra*, at p. 1089.)

There are several exceptions to this rule. Trial courts retain "jurisdiction to vacate a void, but not a voidable, judgment" (*People v. Nelms* (2008) 165 Cal.App.4th 1465, 1472), to correct clerical errors or matters not affected by the judgment (*Alanis, supra*, 158 Cal.App.4th at p. 1473; *Townsel, supra*, 20 Cal.4th at p. 1089), to correct unauthorized sentences (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1424),[3] and to resentence criminal defendants where "specific statutory avenues" authorize it (*People v. King* (2022) 77 Cal.App.5th 629, 637; see *Flores, supra*, 30 Cal.4th at p. 1064). For example, statutes vest jurisdiction in trial courts to correct custody credits, fines, and fees (§§ 1237.1, 1237.2), make certain modifications of sentences (former § 1170, subd. (d)), and grant bail pending appeal (§ 1272, subd. (c)).

b.     *Section 1172.75*

Defendant contends the resentencing provisions in section 1172.75 constitute another statutory exception vesting jurisdiction in the trial court. This statute "legally invalid[ates]"

---

[3]     Neither party has briefed this exception or asked this court to apply it.

any sentence enhancement imposed under former section 667.5(b) prior to January 1, 2020.[4]  (§ 1172.75, subd. (a).)

Under its resentencing provisions, section 1172.75 imposes upon the CDCR and county correctional administrator the duty to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and provide those persons to the sentencing court that imposed the enhancement by March 1 or July 1, 2022. (§ 1172.75, subd. (b).)  After receiving notice of information described in subdivision (b), the superior court "shall verify that the current judgment includes a sentencing enhancement described in subdivision (a)."  (§ 1172.75, subd. (c).)  If the court determines the current judgment includes an invalidated enhancement, it is to recall the sentence and resentence the defendant no later than December 31, 2023.  (*Ibid.*; see also § 1172.75, subds. (d)–(e).)[5]  "'By its plain terms, section 1172.75

---

[4]  Former section 667.5(b) imposed an additional one-year term for serving a prior prison term or county jail felony term except under specified circumstances.  Through Senate Bill No. 136 (2019–2020 Reg. Sess.) (SB 136), the Legislature amended section 667.5(b) by restricting the enhancement for prior prison terms to those served for sexually violent convictions.  (See current § 667.5(b).)  SB 136 retroactively invalidated prison priors imposed for non-sexually violent offenses for cases not yet final as of January 1, 2020.  (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380.)  In 2021, the Legislature added former section 1171.1, now section 1172.75, to retroactively invalidate *all* prison prior enhancements imposed for non-sexually violent offenses.  (Sen. Bill No. 483 (2021–2022 Reg. Sess.); Stats. 2021, ch. 728, § 1.)

[5]  In 2024, the Legislature added subdivision (f) to section 1172.75. (Sen. Bill No. 285 (2023–2024 Reg. Sess.); Stats. 2024, ch. 979, § 2.) This subdivision provides: "Commencing on January 1, 2025, an individual who has been convicted of a sexually violent offense . . . and

6

requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 855 (*Garcia*).)

2.    *Analysis*

Relying on *Velasco, supra*, 97 Cal.App.5th 663, defendant contends section 1172.75 vested jurisdiction in the trial court despite his pending automatic appeal to our Supreme Court.[6]  We disagree.

a.    *Velasco*

In *Velasco*, the defendant was serving a sentence for various criminal offenses when he was identified as eligible for section 1172.75 resentencing.  (*Velasco, supra*, 97 Cal.App.5th at p. 667.)  At the time, the defendant had appealed from another resentencing order made pursuant to section 1172.1 after his judgment had become final.  (See *People v. Velasco* (Nov. 29, 2023, D080603) [nonpub. opn.]; see also *Velasco, supra*, at p. 668,

---

sentenced to death or a life term without the possibility of parole, who, as of January 1, 2025, has not had their judgment reviewed and verified by the sentencing court as provided in subdivision (c), is not eligible for recall and resentencing under this section.  This subdivision does not apply retroactively."

[6]    Appellant also relies on reasoning set forth in *People v. Mayberry* (2024) 102 Cal.App.5th 665 (*Mayberry*) and *People v. Cota* (2023) 97 Cal.App.5th 318 (*Cota*).  Neither case addressed the issue presented here regarding a trial court's resentencing jurisdiction pending a direct appeal.  (See *Cota, supra*, at pp. 328, 331–333 [upholding jurisdiction to consider resentencing request "brought by [the] defendant"]; *Mayberry, supra*, at p. 672 [relying on *Cota* to find section 1172.75 one of the exceptions to rule divesting trial court jurisdiction once execution of sentence begins].)

7

fn. 3 [judicially noticing case no. D080603 "because the court records . . . form[ ] the basis for the People's jurisdictional argument"].)  While that collateral appeal remained pending, the trial court held a section 1172.75 hearing, struck the defendant's one-year prison prior, and resentenced him to a lower term of imprisonment.  (*Velasco*, *supra*, at pp. 668–669.)

On appeal from the section 1172.75 resentencing order, the court began "with the threshold issue of whether the trial court retained jurisdiction to resentence Velasco pursuant to section 1172.75 after [he] filed a valid notice of appeal in case No. D080603."  (*Velasco*, *supra*, 97 Cal.App.5th at p. 669.)  In its analysis of section 1172.75, the court focused on the time limitations placed on the CDCR to identify eligible persons and on the trial court's resentencing discretion.  Recognizing these limitations would often fall during the pendency of an appeal, the court did not believe the Legislature intended to exclude all defendants with pending appeals from the benefit of the statute.  The court concluded that "the trial court here retained jurisdiction to resentence Velasco pursuant to section 1172.75 after Velasco filed a valid notice of appeal" from the prior resentencing proceeding.  (*Id.* at pp. 672–673.)

> b. *The Supreme Court's Exclusive Appellate Jurisdiction*

The Attorney General asserts *Velasco* is inapposite here because it "was not a capital case."  The trial court also distinguished *Velasco* due to defendant's pending appeal to the Supreme Court.  We agree that *Velasco* does not control the outcome of this case.

8

"'Capital cases are different.' They are exclusively within our [Supreme Court's] appellate jurisdiction." (*In re Carpenter* (1995) 9 Cal.4th 634, 646 (*Carpenter*).) "'[B]ecause of the extreme nature of the penalty,'" our state Constitution vests appellate jurisdiction immediately and directly in our Supreme Court "when judgment of death has been pronounced." (Cal. Const., art. VI, § 11(a); *Leone v. Medical Board of California* (2000) 22 Cal.4th 660, 667 (*Leone*), quoting Cal. Const. Revision Com., Proposed Revision (1966) p. 91.) This distinguishes capital cases from those applying "'regular punishment' for felonies." (*People v. Trinh* (2014) 59 Cal.4th 216, 255.)

Consistent with this constitutional grant of jurisdiction, our Legislature long ago enacted section 1239, subdivision (b) (section 1239(b)), which provides: "When upon any plea a judgment of death is rendered, an appeal is automatically taken by the defendant without any action by him or her or his or her counsel." (§ 1239, subd. (b).) Section 1239(b) "require[es] an automatic appeal to [our Supreme Court] of the *entire* judgment, thus including convictions for noncapital as well as capital crimes." (*People v. Massie* (1998) 19 Cal.4th 550, 574 (*Massie*), original italics; see *People v. Carmen* (1951) 36 Cal.2d 768, 770 [appeal from judgment of death for murder and imprisonment for non-homicide offense "comes automatically to this court from the judgment and order denying the motion for a new trial on both counts"].) It is not only the death sentence, but also all capital and noncapital convictions and the sentences imposed within the judgment, that fall under the jurisdiction of the Supreme Court. (See *People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*); *People v. Perkins* (1957) 147 Cal.App.2d 793, 79; see also *Berman v. United States* (1937) 302 U.S. 211, 212; *People v. Burbine*

9

(2003) 106 Cal.App.4th 1250, 1258 ["'an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components'"].)

As the Supreme Court's exclusive appellate jurisdiction springs from our state Constitution, its power cannot be restricted by the Legislature in a manner that would ""substantially impair"" the Court's power or ""practically defeat [its] exercise."' [Citations.]" (*Leone, supra*, 22 Cal.4th at p. 668; see also *Housing Authority of the City of Calexico v. Multi-Housing Tax Credit Partners XXIX, L.P.* (2023) 94 Cal.App.5th 1103, 1119 (*Calexico*) ["jurisdiction is a matter of constitutional import"].) Once conferred by the Constitution, the Court's appellate jurisdiction "cannot be destroyed or abridged by legislative action." (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1417–1418.) A legislative act purporting to "'take away from the courts judicial power [so] conferred . . . or . . . impose on them judicial powers not granted or authorized to be granted by the constitution is void.' [Citations.]" (*Calexico, supra*, at p. 1121.) The Legislature "may propose state constitutional amendments, but such amendments must be submitted to the voters for approval." (*Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 514; see Cal. Const., art. XVIII, §§ 1–2, 4.)

c.     *Interference with the Supreme Court's Capital Jurisdiction*

What then of this situation—where it is argued a legislative enactment, section 1172.75, vests jurisdiction in the superior court to resentence in capital cases pending before the Supreme Court on direct appeal? Courts must be mindful to

10

"avoid conflicts between statutes and constitutional grants of jurisdiction whenever possible . . . ." (*Briggs v. Brown* (2017) 3 Cal.5th 808, 835 (*Briggs*) [given this concern, courts must construe "'legislative enactments strictly against the impairment of constitutional jurisdiction'"].)  Intention to divest our Supreme Court "of jurisdiction 'is not read into the statute unless that result is expressly provided or otherwise clearly intended.' [Citation.]" (*Ibid.*)

Concurrent jurisdiction "can coexist with an ongoing appeal:  'Nothing in article VI, section 10, or any other provision of law, denies the superior court of subject matter jurisdiction over habeas corpus proceedings when the challenged judgment is pending on appeal before an appellate court or even when, as here, a judgment of death is pending on automatic appeal before this court.' [Citation.]" (*People v. Wilson* (2024) 16 Cal.5th 874, 955 (*Wilson*).)  Indeed, a petition for writ of habeas corpus has been legislatively recognized as the exclusive means of collaterally attacking a death sentence.  (§ 1509, subd. (a).) Adjudicating these petitions does not interfere with the Supreme Court's appellate jurisdiction insofar each petition raises arguments and proffers evidence outside the appellate record. (See *Wilson*, *supra*, at p. 955; see *Carpenter*, *supra*, 9 Cal.4th at p. 646.)

However, trial courts do interfere with the Supreme Court's exclusive jurisdiction when they "overrule or set aside" a death penalty judgment or rule "on any ground appearing upon the face of the record on appeal, and which is raised *or could be raised* on said appeal." (*People v. France* (1927) 201 Cal. 122, 132 (*France*), italics added; *Carpenter*, *supra*, 9 Cal.4th at p. 646; compare *People v. Mayfield* (1993) 5 Cal.4th 220, 226 (*Mayfield*) [order

11

overturning appealed-from decision to modify the verdict "plainly interferes with the disposition of that issue on appeal, given that it could be raised and was pending on appeal at the time the court issued its order"] with *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 123–124 (*Thompson*) ["the appeal in this case would not have fallen within this court's exclusive capital jurisdiction, because this is not a *criminal* but a *civil* case, in which plaintiffs invoked the equitable powers of the superior court . . . that could not have been raised in Thompson's appeal from his sentence of death"].)[7]

Here, the parties do not dispute the ameliorative provisions of current section 667.5, from which section 1172.75 resentencing derives, apply to defendant's judgment, which ""'has not yet reached final disposition in the highest court authorized to review it.'"" (*McKenzie, supra*, 9 Cal.5th at p. 46; see also *In re Estrada* (1965) 63 Cal.2d 740, 746–747 (*Estrada*).)  As amended, section 667.5 presents an issue that may be raised before the Supreme Court.[8]  Had the trial court stricken the now-invalidated

---

[7]     The Supreme Court's discussions of concurrent jurisdiction in *Carpenter*, *Mayfield*, and *France* were made in the context of habeas corpus proceedings.  Our Supreme Court has recently "draw[n] from the habeas context" when discussing resentencing proceedings despite noting that "process does not seamlessly map onto" such proceedings. (*People v. Patton* (2025) 17 Cal.5th 549, 564–565; see also *People v. Lewis* (2021) 11 Cal.5th 952, 971.)

[8]     Defendant's suggestion this issue cannot be considered by the Supreme Court because legislative changes occurred after rendition of judgment is not persuasive.  (See *People v. Lopez* (2025) 17 Cal.5th 388, 397 ["Because Lopez had not yet exhausted his direct appeal, Lopez's case had not been reduced to a final judgment for *Estrada* purposes"]; *People v. Esquivel* (2021) 11 Cal.5th 671, 676 ["it is well

12

enhancement pending disposition of defendant's direct appeal, it would have "interfered" with the Court's jurisdiction over the judgment. Resentencing that would follow would also interfere with the Court's jurisdiction by changing other portions of the judgment. As defendant argued in the trial court, section 1172.75 resentencing is holistic in approach. (See § 1172.75, subd. (d)(1)–(2).) Under this approach, the court would have been called upon to reconsider defendant's eight death penalty sentences, which lay at the heart of his direct appeal, and to assess claims that his counsel identified as "go[ing] directly to what's going to be litigated in the Supreme Court . . . ." Counsel's averment demonstrates how resentencing would interfere with the Supreme Court's appellate jurisdiction. (See *Thompson, supra*, 25 Cal.4th at pp. 123–124; *Mayfield, supra*, 5 Cal.4th at p. 226; *France, supra*, 201 Cal. at p. 646.)[9]

Because section 1172.75 does not speak directly to whether trial courts may resentence defendants in capital cases, we are left ""with an ambiguous statute that raises serious

---

settled that a matter is not 'final' for this purpose merely because the defendant has already been sentenced"].)

[9] Whenever the Supreme Court vacates a defendant's sentence under former section 667.5(b), "the parties' interest in repose and finality are necessarily diminished; at that point, the countervailing interest in effectuating current legislative policy decisions may appropriately control." (*People v. Padilla* (2022) 13 Cal.5th 152, 168; see *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 ["the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them"]; see also *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Choi* (2021) 59 Cal.App.5th 753, 769–770 [full resentencing applied on remand after court struck invalidated 667.5(b) enhancements on direct appeal].)

13

constitutional questions, . . .""'" (*People v. Leiva* (2013) 56 Cal.4th 498, 506–507, citation omitted.)  We must therefore ""'endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.'" [Citation.]" (*Ibid*.; see also *Briggs*, *supra*, 3 Cal.5th at p. 835.)  In so doing, we must determine whether the Legislature clearly intended to apply full section 1172.75 resentencing pending disposition of an automatic capital appeal in potential violation of Article VI, section 11 of the California Constitution.  (See *Briggs*, *supra*, 3 Cal.5th at p. 835.) We conclude it did not.

As originally enacted, "section 1172.75 said nothing about resentencing defendants sentenced to death." (*People v. Dixon* (2025) 112 Cal.App.5th 236, 247 (*Dixon*).)  Without any "convincing textual proof" the Legislature sought to impose full section 1172.75 resentencing for capital offenders while their direct appeals remain before the Supreme Court, we turn now to "other features of the statute" for guidance.  (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1061 (*Rhodius*).)

We begin with timing.  Section 1172.75 was enacted in 2021 following decades of legislative and judicial understanding that the "automatic appeal" process in capital cases takes "the *entire* judgment" to the Supreme Court.  (See *Massie*, *supra*, 19 Cal.4th at p. 574; see also § 1239(b).)  We presume the Legislature understood this scope of the Court's exclusive jurisdiction when enacting section 1172.75.  (See *Rhodius*, *supra*, 17 Cal.5th at p. 1062; *People v. Lawrence* (2000) 24 Cal.4th 219, 231 [""'[w]here the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the

14

courts"""""""].)  Given this understanding, the Legislature did not need to expressly exempt capital judgments from section 1172.75 resentencing.[10]

Next, we consider context.  The legislative history of section 1172.75 clarifies "that the Legislature was motivated in large part by a purpose of reducing incarceration and thereby reducing public prison expenditures and overcrowding. . . .  It is reasonable to conclude that the Legislature [ ] intended for section 1172.75 to accomplish this purpose through its full resentencing procedures for defendants whose judgments contain now-invalidated section 667.5(b) enhancements, regardless of whether the enhancements were stayed or executed.  By requiring the trial court to consider a broad range of factors in resentencing, including 'changes in law that reduce sentences' (§ 1172.75, subd. (d)(2)) and postconviction factors that inure in the defendant's favor (*id.*, subd. (d)(3)), resentencing upon the invalidation of a stayed enhancement may well result in the reduction of the effective length of the defendant's term of incarceration."  (*Rhodius*, *supra*, 17 Cal.5th at p. 1065.)

---

[10]  We recognize an amendment to section 1172.75 eliminated resentencing eligibility for persons convicted of sexually violent offenses who are also sentenced to capital punishment.  (See § 1172.75, subd. (f), as enacted by Stats. 2024, ch. 919 (Sen. Bill No. 285 (2023–2024 Reg. Sess.); see also *Dixon*, *supra*, 112 Cal.App.5th at p. 248.)  Notwithstanding the apparent need for clarifying resentencing ineligibility for those convicted of serious sexually violent offenses, the amendment need not have addressed section 1172.75 eligibility for capital offenders whose direct appeals are pending before the Supreme Court.  As discussed, the Court's jurisdiction in these appeals had long been established.

15

Resentencing in this type of case would not further these purposes or the intent underlying section 1172.75. Defendant currently faces eight separate death sentences and a consecutive term of more than 100 years to life in prison. Until defendant's pending appeal is decided, and unless all eight of his death sentences are reversed, any order reducing his non-capital offenses will not result in a reduced period of incarceration, reduced prison overcrowding, or reduced prison expenditures.

While resentencing defendant now might avoid "delay that would attend a rule that would defer relief" (*Rhodius*, *supra*, 17 Cal.5th at p. 1065), doing so may come at the expense of court resources and fully informed resentencing discretion. After recalling an invalidated section 667.5(b) sentence (§ 1172.75, subd. (c)), the trial court must impose a lesser sentence unless it finds "imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) This exercise requires an assessment of factors that include the circumstances of defendant's criminal convictions. (*Garcia*, *supra*, 101 Cal.App.5th at pp. 856–858; see *People v. Hall* (2016) 247 Cal.App.4th 1255, 1261–1262.) We question whether a trial court can make this type of risk assessment from a criminal history that is nonfinal, currently disputed, and subject to material change by the Supreme Court. If the Court subsequently modifies defendant's convictions to his benefit, resentencing on remand may take those modifications into account. (See *People v. Rocha* (2019) 32 Cal.App.5th 352, 360; *People v. Fugit* (2023) 88 Cal.App.5th 981, 995–996; see also § 1260.) If the Court affirms any of defendant's eight death sentences, the resentencing done by the trial court may be for naught.

16

d.    *Dixon*

While this appeal was pending, our colleagues in Division 7 upheld concurrent section 1172.75 resentencing jurisdiction in a capital case on automatic appeal to our Supreme Court, "but not on the death sentence." (*Dixon*, 112 Cal.App.5th at pp. 240, 247.) *Dixon* held, and we agree, that section 1172.75 may not be used to collaterally attack a judgment of death.

However, the issue of the Supreme Court's exclusive jurisdiction over capital appeals was not raised by the appellant or trial court in *Dixon*. As a result, *Dixon* did not address whether the judgment over which the Supreme Court has exclusive jurisdiction can be divided for partial resentencing. Neither *Dixon*, nor defendant in this case, provides authority for dividing the judgment for this purpose. (*See Wilson, supra*, 16 Cal.4th 962, fn. 23 [appellants "lose option" of pursuing concurrent habeas claim for "claims [that] are intertwined with issues on appeal"]; *Monge v. California* (1998) 524 U.S. 721, 734 ["In our death penalty jurisprudence, moreover, the nature and consequences of capital sentencing proceedings are intertwined"].) We conclude the capital judgment over which the Supreme Court has exclusive jurisdiction is indivisible and includes convictions and sentences for noncapital as well as capital offenses.

e.    *Conclusion*

To the extent the Legislature vested concurrent 1172.75 resentencing jurisdiction pending appeal, that jurisdiction does not extend to a capital judgment on direct appeal. As the trial court in this case recognized, it was precluded from interfering with the Supreme Court's exclusive jurisdiction over the

17

judgment by conducting a holistic resentencing pursuant to section 1172.75.

## B. Defendant's Right to Be Present at Resentencing

Defendant next contends the trial court committed prejudicial error by infringing on his federal and state constitutional rights to be present at the resentencing proceedings.  Again, we disagree.

Sentencing and resentencing proceedings may constitute critical stages of criminal prosecution at which a defendant is entitled to be present, guaranteed through federal and state constitutions and statutes.  (*People v. Blacksher* (2011) 52 Cal.4th 769, 798–799; *People v. Rodriguez* (1998) 17 Cal.4th 253, 260; U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; §§ 977, subd. (b)(1), 1043.)  These rights may be waived personally or through counsel under standards applicable to each right.  (See *People v. Cunningham* (2015) 61 Cal.4th 609, 633 [constitutional right]; § 977, subd. (b)(2) [statutory right].)

Absent a valid waiver, constitutional error concerning a defendant's right of presence is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, 23 (*Chapman*), while statutory error is subject to review under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).  (*People v. Mendoza* (2016) 62 Cal.4th 856, 902.)

Assuming without deciding that defendant's federal and state constitutional rights were violated (see *People v. Suarez* (2020) 10 Cal.5th 116, 146 [right of presence does not attach to proceedings wherein presence "'bears no reasonable, substantial relation to [the] opportunity to defend'"]), we discern no prejudice under either *Chapman* or *Watson*.  As discussed, the court

18

correctly found it lacked the right or jurisdiction to conduct resentencing. On these facts, defendant's absence from the hearings "did not affect the outcome of the proceeding[s]" beyond a reasonable doubt. (*People v. Simms* (2018) 23 Cal.App.5th 987, 998.)[11]

## DISPOSITION

The postjudgment order is affirmed.


MORI, J.

We concur:


ZUKIN, P. J.


**GARCIA UHRIG, J.

---

[11]  In light of the foregoing, we disagree with defendant's alternative contention that his appointed trial counsel rendered ineffective assistance by failing to secure his presence at the resentencing hearings. (See *In re Guiomar* (2016) 5 Cal.App.5th 265, 275 [counsel not ineffective for failing to object to matter that would not change resentencing decision]; *People v. Fauber* (1992) 2 Cal.4th 792, 837 [absent any showing of prejudice by defendant's absence from trial, "there can be neither a denial of effective representation" nor a denial of a fair and impartial trial].)

**  Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.